UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ILAN TAVOR, on behalf of himself and all others similarly situated,<br><br>Plaintiff(s),<br><br>-against-<br><br>ANDREW F. TROIA d/b/a TROIA & ASSOCIATES; and JOHN DOES 1-25,<br><br>Defendant(s). | Civil Case No.:<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

**PRELIMINARY STATEMENT**

1.      Plaintiff on behalf of himself and all others similarly situated ("Plaintiff"), by and through his attorneys, alleges that Defendants, ANDREW F. TROIA d/b/a TROIA & ASSOCIATES ("TROIA, ESQ.") and JOHN DOES 1-25 their employees, agents and successors (collectively "Defendants") violated 15 U.S.C. § 1692 *et seq*., the Fair Debt Collection Practices Act (hereinafter "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This is an action for violations of 15 U.S.C. § 1692k *et seq*.

3.      Venue is proper in this district under 15 U.S.C. § 1692k(d) because Plaintiff resides there, and the acts of the Defendant that give rise to this action, occurred in substantial part, in this district.

## DEFINITIONS

4. As used in this complaint, the terms "creditor," "consumer," "debt" and "debt collector" are defined at 15 U.S.C. § 1692a.

## PARTIES

5. Plaintiff is a natural person, a resident of Forest Hills, New York and is a "Consumer" as defined by 15 U.S.C. § 1692a(3).

6. TROIA, ESQ. maintains a location at 59 Maiden Lane, 41st Floor, New York, New York 10038.

7. Defendant uses the instrumentalities of interstate commerce or the mails to engage in the principal business of collecting debt and/or to regularly engage in the collection or attempt to collect debt asserted to be due or owed to another.

8. Defendant is a "Debt Collector" as that term is defined by 15 U.S.C. § 1692(a)(6), and it uses litigation and non-litigation methods in its attempts to collect debts.

9. John Does 1-25, are currently unknown Defendants whose identities will be obtained in discovery and at that time will be made parties to this action pursuant to the Federal Rules of Civil Procedure (hereinafter "FRCP"); Rule 15, Rule 20 and Rule 21. Plaintiff's claims against the currently unknown Defendants arise out of the same transaction, occurrence or series of transactions arising from known Defendant's actions and are due to common questions of law and fact whose joinder will promote litigation and judicial efficiency.

## CLASS ACTION ALLEGATIONS

10. Plaintiff brings this action as a state-wide class action, pursuant to Rule 23 of the FRCP, on behalf of himself and all New York consumers and their successors in interest (the

"Class"), who Defendants collected or attempted to collect a debt from, in violation of the FDCPA, as described in this Complaint.

11.   This Action is properly maintained as a class action. The Class is initially defined as:

> All New York consumers who were sent initial letters and/or notices from TROIA, ESQ., which included the alleged conduct and practices described herein.
>
> The class definition may be subsequently modified or refined.
>
> The Class period begins one year prior to the filing of this Action.

12.   The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

   a. <u>Numerosity:</u> The Class is so numerous that joinder of all members is impracticable because there are hundreds and/or thousands of persons in New York who Defendant(s) collected or attempted to collect a debt from, which violates specific provisions of the FDCPA.

   b. <u>Commonality:</u> There are questions of law and fact common to the class members which predominate over questions affecting any individual Class member. These common questions of law and fact include, without limitation:

   i.   Whether the Defendants violated various provisions of the FDCPA as set forth herein:

   ii.  Whether Plaintiff and the Class have been injured by the Defendants' conduct;

        iii.    Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

        iv.    Whether Plaintiff and the Class are entitled to declaratory relief.

    c.    <u>Typicality:</u> Plaintiff's claims are typical of the Class, which all arise from the same operative facts and are based on the same legal theories.

    d.    <u>Adequacy of Representation:</u> Plaintiff has no interest adverse or antagonistic to the interest of the other members of the Class. Plaintiff will fairly and adequately protect the interest of the Class and has retained experienced and competent attorneys to represent the Class.

13.    A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates no unusual difficulties in the management of this class action.

14.    A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as damages.

15.    Defendant(s) have acted on grounds generally applicable to the entire Class, thereby making appropriate final relief with respect to the Class as a whole.

## STATEMENT OF FACTS

16. Plaintiff was at all times to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

17. At some time prior to September 7, 2023, Plaintiff allegedly incurred a financial obligation to LANE TOWERS OWNERS, INC.

18. The LANE TOWERS OWNERS, INC. obligation arose out of a transaction, in which money, property, insurance or services, which are the subject of the transaction, are primarily for personal, family or household purposes.

19. Plaintiff incurred the LANE TOWERS OWNERS, INC. obligation by obtaining goods and services, which were primarily for personal, family and household purposes.

20. The LANE TOWERS OWNERS, INC. obligation did not arise out of a transaction that was for non-personal use.

21. The LANE TOWERS OWNERS, INC. obligation did not arise out of a transaction that was for business use.

22. Plaintiff incurred the LANE TOWERS OWNERS, INC. obligation in connection with a personal proprietary lease of residential premises.

23. The LANE TOWERS OWNERS, INC. obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

24. LANE TOWERS OWNERS, INC. is a "creditor" as defined by 15 U.S.C. § 1692a(4).

25. On or before September 7, 2023, the LANE TOWERS OWNERS, INC. obligation was assigned, directly or through an agent, to TROIA, ESQ. for the purpose of collections.

26. At the time the LANE TOWERS OWNERS, INC. obligation was assigned to TROIA, ESQ., the LANE TOWERS OWNERS, INC. obligation was in default.

27. TROIA, ESQ. caused to be delivered to Plaintiff two separate letters dated September 7, 2023, regarding the LANE TOWERS OWNERS, INC. obligation. See **Exhibit A & B**, which are fully incorporated herein by reference.

28. The September 7, 2023 letters were the first communications TROIA, ESQ. had with Plaintiff regarding the LANE TOWERS OWNERS, INC. obligation after default.

29. Neither September 7, 2023 letter advised Plaintiff that TROIA, ESQ. was a debt collector as required by 15 U.S.C. § 1692e(11).

30. In addition, TROIA, ESQ. delivered a copy of Exhibit A to a third party which advised the third party about the LANE TOWERS OWNERS, INC. obligation.

31. The third party was not a spouse, parent, guardian, executor or administrator nor was the third party responsible for payment of the LANE TOWERS OWNERS, INC. obligation.

32. The September 7, 2023 letters were received by Plaintiff on or about the same day.

33. The September 7, 2023 letters are "communication" as defined by 15 U.S.C. § 1692a(2).

34. Upon receipt, Plaintiff read and relied on the notices, statements and representations in the September 7, 2023 letters.

35. Exhibit A demanded payment of the LANE TOWERS OWNERS, INC. obligation by September 29, 2023, well within the 30-day period to dispute the debt, request verification and/or the name and address of the original creditor.

36. Pursuant to 15 U.S.C. § 1692l(d) of the FDCPA, "Except as provided in section 1029(a) of the Consumer Financial Protection Act of 2010 (12 U.S.C. 5519(a)), the Bureau may prescribe rules with respect to the collection of debts by debt collectors, as defined in this subchapter."

37. Accordingly, the CFPB prepared and issued rules prescribed under 12 CFR § 1006 et seq., commonly referred to as Regulation F.

38. Regulation F established a Model Form initial collection letter which if used properly by a debt collector would satisfy regulatory compliance with 12 CFR § 1006.34(d)(2)(i).

39. **While a debt collector does not have to use the Model Form initial collection letter, it still is required to provide the consumer with the information now required by Regulation F**.

40. Pursuant to Regulation F, a debt collector must disclose an itemization of the current amount of the debt (i.e., the amount of the debt as of when the validation information is provided).

41. That itemization **must** reflect the amount of the debt incurred since the itemization date that is attributable to 1) interest charged, 2) fees incurred, 3) payments made, and 4) credits.

42. A debt collector **must** include fields in the notice for all four of these items when providing the validation information, even if no additional amounts have accrued since the itemization date.

43. For each of the four items, a debt collector **must** not leave the amount disclosure blank, but instead, **must** indicate that no amounts have been incurred since the itemization date.

For example, if a consumer has not made any payments since the itemization date, a debt collector providing that consumer a written notice must still include a field for payments made in the itemization but may indicate that the value of payments made since the itemization date is "0" or "none," or may state that no payments have been assessed or applied to the debt.

44. Exhibit B failed to include the itemization of the debt as required by Regulation F.

45. Exhibit B failed to include an itemization date of any kind or any reference to an itemization date as required by 12 CFR § 1006.34(c)(2).

46. Pursuant to Regulation F, Defendant was required to provide Plaintiff with the specific date that the debt collector will consider the end date of the validation period during which a consumer may verify the debt. See 12 CFR 1006.34(c)(3)(i)-(iii).

47. Other than providing the name of the creditor to whom the debt is owed and attempting to provide the amount of the debt, Exhibit B failed to comply with Regulation F, which became effective November 30, 2021.

48. Exhibit B failed to include any and all of the additional information required by Regulation F.

49. Exhibit B failed to include all of the notices, information, disclosures, and statements required by Regulation F.

50. Exhibit B failed to include any of the specific dates required under 12 CFR § 1006.34(c)(3).

51. Exhibit B failed to provide the necessary consumer-response information required by 12 CFR § 1006.34(c)(4).

52. Exhibit B failed to advise Plaintiff of the specific date that the validation period would end on.

53. Defendant's letters caused Plaintiff confusion and frustrated his ability to intelligently choose a response to the letters.

54. The stated purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

55. As described herein, Defendant engaged in abusive debt collection practices against the Plaintiff which deprived Plaintiff of the right to enjoy the benefits provided by the FDCPA.

56. Defendants knew or should have known that their actions violated the FDCPA.

57. Defendants could have taken the steps necessary to bring their actions within compliance with the FDCPA but neglected to do so and failed to adequately review their actions to ensure compliance with the law.

### POLICIES AND PRACTICES COMPLAINED OF

58. It is Defendants' policy and practice to collect or attempt to collect debts, which violate the FDCPA, by *inter alia*:

   a) Improperly communicating with a third party about the debt;

   b) Using false, deceptive or misleading representations or means in connection with the collection of a debt;

   c) Failing to effectively convey the amount of the debt;

   d) Overshadowing and/or contradicting Plaintiff's rights under the FDCPA; and

   e) Failing to comply with provisions of Regulation F.

59. Defendants have made collection attempts against at least 50 natural persons in the State of New York within one year of this Complaint.

## COUNT I

### FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *et seq*. VIOLATIONS

60. Plaintiff, on behalf of himself and others similarly situated, repeats and realleges all prior allegations as if set forth at length herein.

61. Collection letters and/or notices, such as those sent by Defendants, are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

62. Defendants' violated various provisions of the FDCPA including but not limited to: 15 U.S.C. § 1692c(b); § 1692e; § 1692e(2)(A); § 1692e(10); § 1692e(11); 1692g(a) et seq.: and § 1692g(b).

63. Defendants violated 15 U.S.C. § 1692e of the FDCPA by using any false, deceptive or misleading representation or means in connection with their attempts to collect debts from Plaintiff and others similarly situated.

64. Defendants violated 15 U.S.C. § 1692e of the FDCPA in connection with their communications to Plaintiff and others similarly situated.

65. As described herein, Defendants violated 15 U.S.C. § 1692e of the FDCPA.

66. By failing to comply with Regulation F as described herein, Defendants violated 15 U.S.C. § 1692e of the FDCPA.

67. Defendants' false, misleading and deceptive statement(s) is material to the least sophisticated consumer.

68. As described herein, Defendants violated 15 U.S.C. § 1692e(2)(A).

69. As described herein, Defendants violated 15 U.S.C. § 1692e(10).

70. As described herein, Defendants violated 15 U.S.C. § 1692e(11).

71. As described herein, Defendants violated 15 U.S.C. § 1692(g)(a) et seq.

72. As described herein, Defendants violated 15 U.S.C. § 1692(g)(b).

73. As described herein, Defendant violated provisions of Regulation F.

74. Congress enacted the FDCPA in part to eliminate abusive debt collection practices by debt collectors.

75. Plaintiff and others similarly situated have a right to free from abusive debt collection practices by debt collectors.

76. Plaintiff and others similarly situated have a right to receive proper notices mandated by the FDCPA.

77. Plaintiff and others similarly situated were sent letters, which have the propensity to affect their decision-making with regard to the debt.

**WHEREFORE,** Plaintiff demands judgment against Defendants as follows:

(a) Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative and his attorneys as Class Counsel;

(b) Awarding Plaintiff and the Class statutory damages;

(c) Awarding pre-judgment interest;

(d) Awarding post-judgment interest;

(e) Awarding Plaintiff costs of this Action, including reasonable attorneys' fees and expenses; and

(f) Awarding Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: October 16, 2023                     Respectfully submitted,

                                           By:    *s/ Joseph K. Jones*
                                                    Joseph K. Jones, Esq.
                                                    jkj@legaljones.com

                                                    JONES, WOLF & KAPASI, LLC
                                                    630 Third Avenue 18th Floor
                                                    New York, New York 10017
                                                    (646) 459-7971 telephone
                                                    (973) 244-0019 facsimile

# Exhibit A

## FIFTEEN (15) DAY NOTICE OF DEFAULT

To:  ILAN TAVOR
     ████████████████████████

     "JOHN DOE" and/or "JANE DOE"
     ████████████████████████

Re:  107-40 Queens Boulevard, Apt. 18A
     Forest Hills, New York 11375
     ("Premises")

Non-Payment of Maintenance and Additional Maintenance Charges

**PLEASE REFER TO** Paragraphs 1, 12, 27, 28 and 31 of the Proprietary Lease for the Premises.

**PLEASE BE ADVISED** that you are in default of the Proprietary Lease of Lane Towers Owners, Inc. ("Lessor") by virtue of the following:

You have failed to satisfy the maintenance payment obligations set forth in Paragraphs 1 and 12 of the Proprietary Lease for Apt. 18A in the amount of **$9,836.99** due through September 7, 2023, as detailed in the Account Statement annexed hereto and made part hereof.

Further, you have failed to satisfy the monthly use and occupancy payment obligations pursuant to the Stipulation of Settlement to Adjourn Public Auction Sale of Cooperative Apartment Collateral (the "Settlement Stipulation") executed on March 30, 2022 as part of the ongoing action captioned *ILAN TAVOR v. LANE TOWERS OWNERS, INC., et. al.* pending in New York State Supreme Court, Queens County under Index No.: 700253/2017. Paragraph "6" of said Settlement Stipulation requires that you pay "ongoing use and occupancy for Apt. 18A and Apt. 19A on or before the 10th day of each month commencing in April 2022 and continuing throughout the Plaintiff's ownership of the Shares of the Corporation appurtenant to Apts. 18A and 19A pursuant to the terms of the Proprietary Lease therefore."

Accordingly, the undersigned hereby demands that you cure said default by submitting payment in the amount of **$9,836.99** representing the balance due through September 7, 2023 exclusive of late fees and legal fees, on or before **September 29, 2023**, that being a date not less than fifteen (15) days from the date of delivery of this Notice. Please note that the balance of **$9,836.99** is comprised of outstanding maintenance charges, assessments and utility charges due through September 7, 2023. If this default is not cured on or before **September 29, 2023**, the Lessor shall have the right to terminate any ownership and/or collateral interest in the Shares appurtenant to the Premises pursuant to the Uniform Commercial Code ("UCC"). Thereafter, the Lessor will initiate a foreclosure of the Shares appurtenant to the Premises. Upon the completion thereof, any and all rights, title and collateral interest held in the Shares by any of the above-named individuals or entities shall be terminated.

**PLEASE BE FURTHER ADVISED** that pursuant to Paragraph 28 of the Proprietary Lease, you will be responsible for the expenses incurred in connection with the Lessor's need to prepare and serve this Notice, any additional Notices and the foreclosure of the Shares appurtenant to the Premises.

**PLEASE BE FURTHER ADVISED** that this correspondence is being submitted in furtherance of the collection of a debt. As such, any information obtained will be used for that purpose.

Dated: New York, New York
       September 7, 2023

TROIA & ASSOCIATES
By: Andrew F. Troia, Esq.
59 Maiden Lane, 41st Floor
New York, New York 10038
(212) 390-8750 Ext. 104

ILAN TAVOR
107-40 Queens Boulevard, Unit 18A
Forest Hills, New York 11375
*Additionally sent via Email to itavor@aol.com per Settlement Stipulation*

Warren S. Dank, Esq.
Warren S. Dank, Esq. P.C.
62 Belmont Circle
Syosset, New York 11791
*Sent via Email to wsdank@wsdanklawfirm.com per Settlement Stipulation*

[REDACTED]
107-40 Queens Boulevard, Unit 18A
Forest Hills, New York 11375

"JOHN DOE"
107-40 Queens Boulevard, Unit 18A
Forest Hills, New York 11375

"JANE DOE"
107-40 Queens Boulevard, Unit 18A
Forest Hills, New York 11375

M&T Mortgage Corporation
1 M&T Plaza
Buffalo, New York 14203
*Sent via Regular Mail and Certified Mail No. 9589 07105270 1288 4875 97*

# Exhibit B



To: ILAN TAVOR                                   Dated: September 7, 2023

    This firm has been retained to collect a debt consisting of outstanding maintenance and additional maintenance totaling **$9,836.99**. Any information obtained will be used for that purpose.

    The below named creditor claims that you owe outstanding maintenance and additional maintenance as specified. You have thirty (30) days from receipt of this notice to dispute the debt. If you fail to do so, we will assume the debt to be valid. If you timely notify us, in writing, that you do dispute the debt, we will obtain verification of the debt and mail the same to you. Upon your written request made within thirty (30) days of receipt of this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

    This opportunity to dispute the debt is separate from any response that you are required to make or any action you are required to take with respect to any other legal notices you receive. Please respond to any legal notices you may receive within the time frames set forth in those notices.

Creditor: LANE TOWERS OWNERS, INC.


ILAN TAVOR
107-40 Queens Boulevard, Unit 18A
Forest Hills, New York 11375

cc:

Warren S. Dank, Esq.
Warren S. Dank, Esq. P.C.
62 Belmont Circle
Syosset, New York 11791