UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ILAN TAVOR on behalf of himself and all other similarly situated,

               *Plaintiffs*,

    -against-

ANDREW F. TROIA, ESQ d/b/a TROIA & ASSOCIATES. and JOHN DOES 1-25,

              *Defendants*.

23-CV-7724 (ARR) (CLP)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

Plaintiff, Tavor Ilan, filed this class action Complaint[1] against defendants, Andrew F. Troia, Esq. doing business as Troia & Associates and John Does 1-25, alleging numerous violations of the Fair Debt Collection Practices Act ("FDCPA") in connection with two debt collection letters that defendants mailed plaintiff and his girlfriend. First Amended Complaint ¶¶ 1, 27–29, 31 ("FAC"), ECF No. 6. Andrew F. Troia, Esq. is a debt collector, *id.* ¶ 8, and John Does 1-25 are unknown "employees, agents and successors" of Troia & Associates, *id.* ¶ 1. On October 19, 2023, I issued an order to show cause directing the parties to submit briefs on whether plaintiff has adequately alleged an injury in fact for standing purposes. Docket Entry Dated October 19, 2023. Because plaintiff has failed to allege a concrete injury, I dismiss his claims for lack of subject matter jurisdiction.

## BACKGROUND

This case concerns a dispute between defendants and Mr. Tavor over defendants' efforts

---

[1] Plaintiff filed an Amended Complaint on October 27, 2023. *See* FAC, ECF No. 6. This is the operative Complaint and any reference to plaintiff's "Complaint" is a reference to the First Amended Complaint.

to collect a debt that Mr. Tavor allegedly owes to Lane Towers Owners, Inc. ("Lane Towers"). *Id.* ¶¶ 17, 19, 22. "The Lane Towers . . . obligation was assigned . . . to [defendants] for the purpose of collections" after Mr. Tavor defaulted on the obligation. *Id.* ¶¶ 25–26. In an effort to collect the debt, on September 7, 2023, defendants mailed Mr. Tavor two separate letters. *Id.* ¶ 27. According to Mr. Tavor, neither letter included information that the FDCPA and its corresponding regulations require debt collectors to include in their communications with consumers. *Id.* ¶¶ 30, 47–59; *see also id.*, Exs. A–B. Mr. Tavor alleges that the letters omitted the following information: defendants' status as a debt collector, as required by 15 U.S.C. § 1692e(11), *id.* ¶ 30; much of the debt validation information, including an itemization of the debt and dates related to the itemization as required by Regulation F, 12 C.F.R. § 1006.34(c), *id.* ¶¶ 47–53, 56, 59; and consumer response information required by 12 C.F.R. § 1006.34(c)(4), *id.* ¶ 58. In addition to this missing information, Mr. Tavor alleges that one of the letters "demanded payment of the [Lane Towers] obligation by September 29, 2023," which was within the 30-day period that the FDCPA grants consumers to dispute debts after receiving a debt collection letter. *Id.* ¶ 42; *see also* 15 U.S.C. § 1692g(a)(3). Finally, Mr. Tavor contends that defendants intentionally sent one of the letters to his girlfriend, a third-party who is in no way responsible for the debt, in violation of 15 U.S.C. § 1692c(b). *Id.* ¶¶ 31–34, 69.

As a result of defendants' actions, Mr. Tavor alleges that he experienced two concrete injuries. First, Mr. Tavor asserts that the letters put his relationship with his girlfriend under stress and "caused discord between [them]"; he had to "explain and prove to [her] that she wasn't responsible for the [debt]." *Id.* ¶¶ 35–36. He also alleges that defendants' actions caused him "severe emotional stress." *Id.* ¶ 38. In his reply to defendants' response to my order to show cause, Mr. Tavor links the emotional injury he experienced to the "stress and discord" he suffered with

his girlfriend. Pl.'s Reply to Order to Show Cause 2 ("Pl.'s Reply"), ECF No. 18. Second, Mr. Tavor contends that because the letters omitted critical information he was confused and unsure of how to "intelligently choose a response." FAC ¶ 60; *see also* Pl.'s Mem. in Supp. 5 ("Pl.'s Mem."), ECF. No. 14; Pl.'s Reply 2.

## LEGAL STANDARD

Standing is an essential element of a federal court's subject matter jurisdiction. To have standing, a plaintiff must allege that: "he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). Federal judges have derived these requirements from Article III, which specifies that the judicial power "extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const., art. III, § 2). This limitation, and the standing doctrine that judges have developed to implement it, guarantees that federal courts only resolve "real controvers[ies] with real impact on real persons." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) (quotation omitted).

Specifically, the concrete injury requirement ensures that the harm a plaintiff experiences is "'real,' and not 'abstract.'" *Spokeo*, 578 U.S. at 340 (quoting *Webster's Third New International Dictionary* 472 (1971); *Random House Dictionary of the English Language* 305 (1967)). The Supreme Court has provided some guidance on how to determine if a harm qualifies as a concrete injury. "Traditional tangible harms, such as physical harms and monetary harms" qualify as concrete injuries. *TransUnion*, 594 U.S. at 425. Intangible harms may also be concrete. *Id.* To determine if an alleged harm is sufficiently concrete, I must analyze whether the injury has a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts . . . . [including], for example, reputational harms, disclosure of private information, and intrusion

upon seclusion." *Id.* The Court in *TransUnion* clarified, however, that, "[i]n looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate." *Id.* at 433.

In addition to looking to common law causes of action, "Congress's views may be instructive" in determining whether a harm is sufficiently concrete. *Id.* at 425 (quotation marks omitted). The Court instructed that "[c]ourts must afford due respect to Congress's decision to impose a statutory prohibition . . . and to grant a plaintiff a cause of action." *Id.* This does not mean, however, that a plaintiff can satisfy the concrete injury requirement by simply alleging that a defendant violated a statute, even if that statute grants a cause of action to sue over its violation; instead, a plaintiff must allege that he has been "*concretely harmed* by a defendant's statutory violation." *Id.* at 426 ("Congress's creation of a statutory prohibition . . . and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."); *but see Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998) (determining that plaintiff's "inability to obtain information" that Congress decided to make public was a sufficiently concrete injury for standing purposes).

## DISCUSSION

Mr. Tavor has asserted two injuries, which he argues are concrete for standing purposes: (1) the emotional distress and discord in his relationship that he suffered after defendants mailed the debt collection letter to his girlfriend; and (2) his confusion and inability to discern how to intelligently respond to the letters due to defendants' failure to include statutorily required information in the mailings. *See* Pl.'s Mem. 4–6. I will discuss each injury.

### I.   Emotional Distress

The parties spend the bulk of their papers arguing about whether Mr. Tavor has pleaded

his emotional distress injury with sufficient specificity. Defendants argue that Mr. Tavor's allegation of emotional distress is "perfunctory" and that he "fails to offer any reason why the alleged stress on his relationship and corresponding 'discord' would cause 'great stress, mental anguish, anxiety and distress' sufficient to convey standing." Defs.' Mem. Response to Order to Show Cause 2 ("Defs.' Mem."), ECF No. 14; *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 66 (2021) ("A perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing."). Plaintiff argues, on the other hand, that his emotional distress injury is sufficiently concrete because it is linked to the "stress and discord with his girlfriend" that resulted when defendants "attempt[ed] to collect a debt from her she did not owe." Pl.'s Reply 2.

The parties do not discuss, however, whether the harm Mr. Tavor alleges has a common law analog, which is where I must start. In similar cases involving allegations that a debt collector violated the FDCPA's restriction on communication with entities other than the consumer, courts have drawn analogies to the common law right to privacy,[2] and specifically, to the tort forbidding public disclosure of private facts.[3] *See, e.g.*, *Cavazzini v. MRS Associates*, 574 F. Supp. 3d 134,

---

[2] Other common law causes of action are a bad fit. "[P]laintiff[] cannot invoke the common law tort of intentional infliction of emotional distress because simply mailing a collection letter, even if erroneous, is a far cry from [the] 'extreme and outrageous conduct,'" which that tort requires to constitute a claim. *In re FDCPA Mailing Vendor Cases*, 551 F. Supp. 3d 57, 65 (E.D.N.Y. 2021). To succeed on a negligent infliction of emotional distress claim, a plaintiff must show that the defendant "breach[ed] . . . a duty owed directly to the plaintiff which either unreasonably endanger[ed] a plaintiff's physical safety or cause[d] the plaintiff to fear for his or her own safety." *Daluise v. Sottile*, 837 N.Y.S. 2d 175, 178 (2d App. Div. 2007). Here, Mr. Tavor has not alleged that the letters endangered his physical safety or made him fear for his safety. Finally, defamation is also not a suitable analogy because, under New York law, the defamatory words must include a false statement, *see Goldman v. Reddington*, 417 F. Supp. 3d 163, 171 (E.D.N.Y. 2019), and Mr. Tavor has not alleged that the letters included a false statement about him.

[3] Because "New York does not have a common law right to privacy, I look to the Restatement as a guide in carrying out *TransUnion's* historical common law analysis." *Cavazzini*, 574 F. Supp.

141 (E.D.N.Y. 2021). To state a claim for publicity given to private life, a plaintiff must allege that that the matter publicized is of a kind that "(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Restatement § 652D. Additionally, it is typically not enough if the defendant communicates "a fact concerning the plaintiff's private life to a single person or even to a small group of persons"; instead, the defendant must communicate the matter "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* cmt. a. In some instances, "disclosure to a single person may very well qualify as publicity," as long as the effect of said disclosure has the potential to make a plaintiff's private matters public, as may be the case if, for example, the defendant shares the plaintiff's information with a journalist. *Hunstein v. Preferred Collection & Mgmt. Srvs, Inc.*, 48 F.4th 1236, 1247 (11th Cir. 2022).

In several cases involving facts similar to this case, federal courts have rejected the analogy to the tort of publicity given to private life. *See Nabozny v. Optio Sols. LLC,* 84 F.4th 731, 732–33, 735–37 (7th Cir. 2023); *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 826–29 (10th Cir. 2022); *Hunstein*, 48 F.4th at 1239–40, 1246–50 (11th Cir. 2022); *Cavazzini*, 574 F. Supp. 3d at 136–38, 141–43 (E.D.N.Y. 2021). In *Hunstein*, for example, the plaintiff alleged that a debt collector violated his rights under § 1692c of the FDCPA by sharing his financial information with a third-party mailing entity hired to send him letters in an attempt to collect his

---

3d at 141. The common law right to privacy includes four separate causes of action: public disclosure of private facts, false light, intrusion upon seclusion, and appropriation of likeness. Restatement (Second) of Torts § 652A ("Restatement") (Am. Law Inst. 1977). Based on Mr. Tavor's alleged injury, three of the sub-categories are inapplicable. False light requires the statement to be false, *id.* § 652E, and Mr. Tavor has not alleged that there is any incorrect information about him in the Complaint. "Intrusion upon seclusion requires the *intrusion* to have caused an injury, not a subsequent disclosure of the information gained from the intrusion," which is the nature of the alleged harm in this case. *Cavazzini*, 574 F. Supp. 3d at 141 n.10. Lastly, Mr. Tavor has not alleged any facts resembling an appropriation of likeness.

debt. *See Hunstein*, 48 F.4th at 1240. The Eleventh Circuit determined that the plaintiff's attempt to analyze the harm he experienced to the tort of public disclosure of private information was unsuccessful because the defendant shared his financial information with only one mailing vendor. *Id.* at 1245–46 & n.5. The Court concluded that the plaintiff failed to plead the critical element of publicity; instead, the disclosure in his case involved only a "private disclosure." *Id.* 1245–46, 1248 ("[N]owhere does Hunstein suggest that [the] communication reached, or was sure to reach, the public. Quite the opposite—the complaint describes a disclosure that reached a single intermediary, which then passed the information back to Hunstein without sharing it more broadly."). As to Congress's views, the Court explained that although Congress "targeted 'invasions of individual privacy' when it passed the Fair Debt Collection Practices Act . . . . congressional intent does not automatically transform every arguable invasion of privacy into an actionable, concrete injury." *Id.* at 1248. Hunstein, the Court concluded, "alleged only a legal infraction . . . not a concrete harm." *Id.*

Mr. Tavor's case is like the mailing vendor cases. He alleges that defendants shared his information with only one other individual—his girlfriend. FAC ¶ 32. Defendants did not otherwise make his private information public. As the Restatement makes clear, "it is not an invasion of the right to privacy . . . to communicate a fact concerning . . . plaintiff's private life to a single person." Restatement § 652D cmt. a. Mr. Tavor also does not allege that this disclosure is likely to make his financial information known to the larger community. As a result, the injury Mr. Tavor suffered is not like the harm that would give rise to a cause of action for the tort of publicity given to private life.

Congress's views do, however, point in the opposite direction. The FDCPA explicitly prohibits debt collectors from sharing a consumer's financial information with third parties. 15

U.S.C. § 1692c(b). Further, the FDCPA's legislative history demonstrates that Congress intended the law to prevent debt collectors from "disclosing a consumer's personal affairs to friends [or] neighbors," *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (quoting S. Rep. No. 95–382, at 2 (1977)), which is exactly what defendants allegedly did in this case, *see* FAC ¶ 32. Because the harm Mr. Tavor experienced does not have a "close relationship" with a common law cause of action, however, his injury, as pleaded, is insufficiently concrete for standing purposes.

## II.    Confusion and Inability to Intelligently Choose a Response

Mr. Tavor's second injury is the confusion that resulted from defendants' omission of statutorily required information from their debt collection letters, which impeded Mr. Tavor's ability to intelligently choose a response. FAC ¶ 60. Mr. Tavor's confusion-based injury is most analogous to harms that have traditionally given rise to a cause of action for fraudulent or negligent misrepresentation. *See, e.g., Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 148 (3d Cir. 2023) (determining that the tort of fraudulent misrepresentation was an "apt analogue" for the plaintiff's claim against the defendant for sending him "deceptive [debt] collection letters"); *Rosenberg v. McCarthy, Burgess & Wolff, Inc.*, No. 21-CV-2199 (MKB), 2022 WL 3030390, at *4 (E.D.N.Y. Aug. 1, 2022) (same). The harms Mr. Tavor suffered, however, do not bear a sufficiently "close relationship" with the harms that provide a basis for fraudulent or negligent misrepresentation. Both torts require that the alleged harm spring from some justifiable reliance on the misrepresentation or omission. *See Rosenberg*, 2022 WL 3030390, at *4 (summarizing the elements of fraudulent and negligent misrepresentation). "[M]erely receiving a letter from a debt collector that was confusing or misleading . . . does not demonstrate a harm closely related to fraudulent or negligent misrepresentation—both of which require some form of reliance . . . ." *Kola v. Forster & Garbus LLP*, No. 19-CV-10496 (CS), 2021 WL 4135153, at *7 (S.D.N.Y. Sept.

10, 2021).

The only harm that Mr. Tavor contends resulted from not receiving all the required information is confusion. FAC ¶ 60. He has not alleged that he acted, or failed to act, to his detriment in reliance on the incomplete information in the letters. Courts have determined that confusion alone is not a sufficiently concrete injury for standing purposes. *See, e.g., Pennell v. Glob. Tr. Mgmt., LLC,* 990 F.3d 1041, 1045 (7th Cir. 2021) (determining in an FDCPA action that "the state of confusion is not itself an injury" for standing purposes); *Garland v. Orlans, PC*, 999 F.3d 432, 440 (6th Cir. 2021) ("[B]are allegations of confusion and anxiety do not qualify as injuries in fact . . . ."); *Clark v. McCabe, Weisburg & Conway, LLC,* No. 22-CV-3289 (RPK), 2022 WL 3030347, at *2 (E.D.N.Y. Aug. 1, 2022) ("Insofar as plaintiff alleges she was confused by the challenged letter . . . her allegation is inadequate because the 'state of confusion is not itself an injury [for purposes of Article III].'" (quoting *Pennell*, 990 F. 3d at 1045)). Further, plaintiff's allegation that the missing information "frustrated his ability to intelligently choose a response to the letters," is not sufficiently different from his allegation that he was confused. *See* FAC ¶ 60. He still failed to plead any concrete consequences that resulted from this frustration. *See Spitz v. Caine & Weiner Co.*, No. 23-CV-7853 (PKC), 2024 WL 69089, at *1, 4 (E.D.N.Y. Jan. 5, 2024) (dismissing plaintiff's FDCPA claim for lack of subject matter jurisdiction because her allegation that the defendant's debt collection letters—which contained inaccurate information—caused confusion and frustrated her ability to "determine how to respond to [d]efendant's [l]etter" was not a concrete injury).

Plaintiff cites to two Third Circuit cases to support his argument that his confusion is a sufficiently concrete injury. Pl.'s Mem. 5 (citing *Huber*, 84 F.4th 132 and *Deutsch v. D&A Servs., LLC,* No. 22-1042, 2023 WL 2987568 (3d. Cir. Apr. 18, 2023)). Neither case changes the outcome

here. In *Huber*, the plaintiff brought a claim under the FDCPA "after receiving confusing collection letters" from the defendant. 84 F.4th at 140. The Third Circuit determined that the plaintiff suffered a concrete injury because she alleged that the misleading letters caused her more than mere confusion. *Id.* at 149. Instead, the plaintiff alleged that she "suffer[ed] some cognizable harm that flow[ed] from that confusion"—namely, paying for a consultation with her financial advisor and failing to "pay down her debts or otherwise take appropriate action." *Id.* Mr. Tavor has made no such allegation.

In *Deutsch*, the Third Circuit determined that the plaintiff adequately alleged that she suffered an adverse effect from defendant's omission of information from a collection letter because the omission "frustrated her ability to intelligently choose her response and deprived her of her right to enjoy the benefits provided by the FDCPA." *Deutsch*, 2023 WL 2987568, at *3 (cleaned up). In reaching this decision, the Third Circuit relied on the informational injury doctrine, under which a defendant's omission of statutorily required information may confer standing on a plaintiff. *Id.* at *3. Under this doctrine, however, a plaintiff must still allege "downstream consequences from failing to receive . . . required information." *TransUnion*, 594 U.S. at 442 (quotation marks omitted); *see also Clarke v. McCabe, Weisburg & Conway, LLC*, 22-CV-3289 (RPK), 2022 WL 3030347, at *2 (E.D.N.Y. Aug. 1, 2022) (explaining that an "'asserted informational injury that causes no adverse effects cannot satisfy Article III'") (quoting *TransUnion*, 594 U.S. at 442). In *Deutsch*, the plaintiff specifically articulated how the mailings confused her. *See Deutsch*, No. 21-CV-12286 (AET), Compl. ¶¶ 38–46, ECF No. 1 (explaining specifically the nature of plaintiff's confusion and its source). Mr. Tavor, on the other hand, has simply alleged that the missing information frustrated his ability to respond. FAC ¶ 60. He has failed to specifically allege any downstream consequences. Without more, Mr. Tavor's allegations

amount to nothing more than mere confusion, which, as discussed, is insufficient.

## CONCLUSION

Because Mr. Tavor has failed to allege that he suffered a concrete injury, I dismiss this case without prejudice for lack of subject matter jurisdiction. *See Carter v. HealthPort Techs.*, LLC, 822 F.3d 47, 54 (2d Cir. 2016) ("[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice."). Because it is possible that Mr. Tavor may be able to establish standing, I grant him leave to amend his complaint. *See, e.g., Gannon v. 31 Essex St. LLC*, 22-CV-1134 (ER), 2023 WL 199287, at *4 (S.D.N.Y. Jan. 17, 2023) (dismissing plaintiff's complaint for failure to establish standing, but granting plaintiff leave to amend because it was "not yet apparent that another opportunity to amend would be futile"); *Rath v. Jo-Ann Stores, LLC*, No. 21-CV-791S (WMS), 2022 WL 3701163, at *8–9 (W.D.N.Y. Aug. 26, 2022) (terminating defendant's motion to dismiss and granting plaintiff the opportunity to amend her complaint to allege standing).


SO ORDERED.



_____/s/_____

Allyne R. Ross
United States District Judge


Dated:      January 31, 2024
            Brooklyn, New York